UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| IN RE: ) | Case No. 06-21067 (ASD) |
| ) | |
| MCMC, LLC, ) | Chapter 7 |
| ) | |
|     DEBTOR ) | |
| --- | |
| ) | Adv. Pro. No. 08-02060 |
| THOMAS C. BOSCARINO, ) | |
| CHAPTER 7 TRUSTEE, ) | RE: ECF Nos. 29, 37 |
| ) | |
|     PLAINTIFF, ) | |
| v. ) | |
| ) | |
| BERKLEY UNDERWRITING ) | |
| PARTNERS, LLC and STARNET ) | |
| INSURANCE COMPANY, ) | |
| ) | |
|     DEFENDANTS ) | |

<u>APPEARANCES:</u>

| | |
|---|---|
| Thomas C. Boscarino<br>John H. Grasso<br>Boscarino, Grasso & Twachtman, LLP<br>628 Hebron Avenue, Building 3<br>Glastonbury, CT 06033 | Attorneys for Plaintiff |
| Bradley M. Smolkin<br>Jill K. Hauff<br>Morrison Mahoney, LLP<br>250 Summer Street<br>Boston, MA 02210 | Attorneys for Defendants |

_____

**MEMORANDUM OF DECISION
DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND
ORDER SCHEDULING TRIAL AND
LIMITING THE PRESENTATION OF EVIDENCE AT TRIAL**

ALBERT S. DABROWSKI, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is an adversary proceeding in which the Plaintiff, as the duly appointed Chapter 7 Trustee, seeks to avoid and recover as preferential, pursuant to 11 U.S.C. § 547(b), a transfer of funds from MCMC, LLC (hereafter, the "Debtor") to Berkley Underwriting Partners, LLC (hereafter, "Berkley") and/or StarNet Insurance Company (hereafter, "StarNet")(collectively hereafter, the "Defendants" or "Creditors"). The parties filed cross-motions for summary judgment[1]. As more fully explained hereafter, it appears that all relevant factual issues in this proceeding except one are undisputed – a single narrow material issue remains – whether certain funds transferred by Wright Risk Management Company, Inc. (hereafter, "Wright Risk"), the parent company of the Debtor, to the Debtor's operating account constitute "an interest of the Debtor in property" within the purview of section 547(b). Accordingly, the cross-motions for summary judgment shall be denied, and the proceeding scheduled for a trial limited to resolving this remaining issue.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following factual background is derived from the summary judgment pleadings of the parties, including, *inter alia*, the *Statement of Material Facts in Support of Defendants' Motion for Summary Judgment* (hereafter, "Defendants' Local Rule 56(a)1

---

[1] See, *Defendants' Motion for Summary Judgment*, ECF No. 29; *Plaintiff's Motion for Summary Judgment*, ECF No. 37.

Statement"), ECF No. 31, and *Plaintiff's Local Rule 56(a)2 Statement*, ECF No. 41, as well as the Court's independent examination of the official record of the instant bankruptcy case and adversary proceeding.[2] At all relevant times, Berkley, a member of W.R. Berkley Corporation (hereafter, "WRBC"), was an underwriting management company that had the authority to contract, on behalf of StarNet, an insurance company and wholly owned subsidiary of WRBC, for Third Party Administrator ("TPA") claims handling services provided by the Debtor. Wright Risk was the parent and sole member of the Debtor.

Between February and May 2006, the Debtor suffered the "unexpected loss of several major accounts" as well as the departure of both its President and Chief Executive Officer, causing the Debtor's parent company, Wright Risk, to make the decision to dissolve the Debtor as a business entity pursuant to Connecticut General Statutes § 34-206 *et seq*. Defendants' Local Rule 56(a)1 Statement, ECF No. 31, ¶9. In May 2006, in connection with pending litigation between StarNet and the Debtor in the Connecticut Superior Court, the Debtor "entered into a Confidential Settlement Agreement and Mutual Release of Claims (the 'Settlement Agreement'), wherein StarNet and the Debtor were each obliged to contribute equal sums ($42,500) to fund a settlement" to an insured. *Id.*, ¶15. The Debtor and StarNet agreed to each contribute their respective payments of $42,500.00 to Berkley, after which Berkley would then assume responsibility for disbursing the total $85,000.00 in funds to the insured. *Id.,* ¶16.

---

[2]The Court notes that the material facts therein which are relevant to this proceeding are substantially similar to those contained in the Plaintiff's Motion for Summary Judgment and the accompanying pleadings and responses. See also, *Plaintiff's Statement of Material Facts Not in Dispute* (hereafter, the "Plaintiff's Local Rule 56(a)1 Statement"), ECF No. 38, and *Defendants' Local Rule 56(a)2 Statement*, ECF No. 40.

From February to August 2006, Wright Risk made several deposits totaling approximately $585,000.00 into the Debtor's operating account to sustain a positive account balance. *Id*., ¶¶ 20-22, 26-27. Of this amount, the last deposit by Wright Risk into the Debtor's account, which then had a balance of zero, was in the amount of $150,000.00 on August 24, 2006, "the same day a check was cut to the Defendants [in the amount of $42,500] to fund [the Debtor's] half of the state court settlement." *Id.,* ¶ 23. In directing another employee via e-mail to execute the deposit, Albert Trotter, the Chief Financial Officer of Wright Risk, wrote that the purpose of the deposit was "for the second portion of . . . MCMC's liquidation plan," *id.,* ¶¶ 24, without specifying that certain of the funds should be used to pay the Debtor's obligation under the Settlement Agreement. On August 17, 2006, Wright Risk dissolved the Debtor by filing appropriate Articles of Dissolution with the State of Connecticut, made retroactive to June 8, 2006. *Id*., ¶8.

On October 31, 2006, the Debtor's Chapter 7 bankruptcy case was commenced by the filing of an involuntary petition. The duly appointed Chapter 7 Trustee commenced the instant adversary proceeding on October 30, 2008, seeking to avoid, as a preferential transfer under § 547(b), the Debtor's payment of the $42,500 settlement contribution to Berkley, alleging, *inter alia*, that the payment constituted a transfer of an interest of the Debtor in property made within 90 days prior to the bankruptcy petition date. *Id.*, ¶12.

### III.  DISCUSSION

**A.    Summary Judgment Standards**

Federal Rule of Civil Procedure 56(c)[3], made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, directs that "[a] motion for summary judgment 'may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.'" *Gaud-Figueroa v. Metropolitan Life Ins. Co.*, --- F.Supp.2d ---, 2011 WL 572320 at *1 (D.Conn, February 14, 2011)(quoting *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir.2009)). Upon consideration of a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also*, *In re Dana Corp.*, 574 F.3d at 151.

The moving party has the burden of showing that there are no material facts in dispute, and all reasonable inferences are to be drawn, and all ambiguities resolved, in favor of the non-moving party. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also, United Transp. Union v. National R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir.2009). Where, as here, the parties have filed cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir.1981)).

---

[3]Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. However, because the record reflects that the present matter was commenced in 2008, and that summary judgment pleadings have been submitted by both parties in compliance with the prior version of the rule, the Court determines it just to apply Rule 56 effective as of December 1, 2009 and prior to the most recent amendment. *See* Fed. R. Civ. P. 86(a)(2)(B).

The Court, in ruling upon a summary judgment motion, "cannot try issues of fact, but can only determine whether there are issues of fact to be tried." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962)).

## B.    Section 547(b) Prohibition Against Preferential Transfers

Bankruptcy Code Section 547 provides in relevant part as follows:

\* \* \* \*

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer *of an interest of the debtor in property*–

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made--

        (A) on or within 90 days before the date of the filing of the petition; . . . . and

    (5) that enables such creditor to receive more than such creditor would receive if--

        (A) the case were a case under chapter 7 of this title;

        (B) the transfer had not been made;  and

        (C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

\* \* \* \*

11 U.S.C. § 547 (2005)(emphasis added).

According to the legislative history of section  547(b),

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy. The protection thus afforded the debtor often enables [it] to work [its] way out of a difficult financial situation through cooperation with all of [its] creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of [its] class is required to disgorge so that all may share equally.

*In re Roblin Industries, Inc.*, 78 F.3d 30, 40 (2d Cir. 1996) (citing *H.Rep. No. 595, 95th Cong., 1st Sess.* 177-78 (1977)).

The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer under Section 547(b). 11 U.S.C. § 547(g) (2005). A transfer may be avoided as preferential by establishing the following:

(1) the transfer is of an interest of the debtor in property;
(2) to or for the benefit of a creditor;
(3) on account of an antecedent debt;
(4) made while the debtor was insolvent;
(5) within 90 days of bankruptcy or within a year of bankruptcy if the creditor was an insider;
(6) and the transfer enabled the creditor to receive more than it would have received in a chapter 7 liquidation had the transfer not taken place.

*In re Flanagan*, 503 F.3d 171, 180 (2d Cir. 2007) (citing *Lawson v. Ford Motor Co.*, 78 F.3d 30, 34 (2d Cir.1996)).

In this proceeding it is undisputed[4] that there was a transfer of property to or for the

---

[4] Certain factual assertions of the Defendants, which are denied by the Plaintiff, concern the Debtor's alleged motivation for entering into the Settlement Agreement, which are largely irrelevant to a preference determination. *See, In re Interior Wood Products Co.*, 986 F.2d 228, 232 (8th Cir. 1993)("The intent of the parties is not a factor to consider when determining if the payment constituted a voidable preference.").

7

benefit of a creditor[5], on account of an antecedent debt[6], made while the Debtor was insolvent[7], within 90 days of filing a bankruptcy petition[8], and that the transfer enabled the Creditors to receive more than they would have in a Chapter 7 liquidation[9]. The one remaining disputed issue is focused and narrow – whether $150,000.00 deposited by Wright Risk into the Debtor's operating account on August 24, 2006, and specifically whether $42,500 of those funds subsequently transferred by the Debtor to Berkley to satisfy the Debtor's obligation to contribute to a settlement, constitute "an interest of the debtor in property" pursuant to Bankruptcy Code section 547(b).

## IV. CONCLUSION AND ORDER

**IT APPEARS** that there remains a genuine issue of material fact to be tried, in accordance with which

**IT IS HEREBY ORDERED** that the *Defendants' Motion for Summary Judgment*, ECF No. 29, and *Plaintiff's Motion for Summary Judgment*, ECF No. 37, are **DENIED**, and

---

[5] Defendants' Local Rule 56(a)1 Statement, ¶15 ("StarNet and the Debtor were each obligated to contribute equal sums ($42,500) to fund a settlement to the insured . . ."), ¶16 (". . . the Debtor paid its share to Berkley"). *See also,* Plaintiff's Local Rule 56(a)1 Statement, ¶5 (citing evidence of the payment).

[6] Defendants' Local Rule 56(a)1 Statement, ¶¶15-17 (stating, *inter alia*, "[i]n May 2006 . . . StarNet and the Debtor were each obliged to contribute equal sums ($42,500)").

[7] Defendants' Local Rule 56(a)1 Statement, ¶¶ 25-27 (". . . MCMC's account again fell below $0"), ("By August 24, MCMC's account was negative again . . ."). *See also,* Plaintiff's Local Rule 56(a)1 Statement, ¶6.

[8] Defendant's Local Rule 56(a)1 Statement, ¶10 ("On October 31, 2006, an involuntary bankruptcy petition was filed by MCMC"), ¶27 ("August 24 . . . the same day that MCMC made the payment").

[9] Defendant's Local Rule 56(a)1 Statement, ¶27 ("MCMC's account was negative again"), ¶17 (stating that MCMC made its payment to pay the insured in full).

**IT FURTHER APPEARING** that interests of judicial economy warrant limiting trial to the disputed issue discussed above, in accordance with which

**IT IS FURTHER ORDERED** that trial of this Adversary Proceeding shall commence on <u>Tuesday, May 24, 2011 at 10:00 AM</u>, at the United States Bankruptcy Court, 450 Main Street (7th Floor), Hartford, Connecticut, with the undisputed facts and issues set forth above and admitted in the *Defendants' and Plaintiffs' Motion(s) for Summary Judgment and* supporting memorandum deemed stipulated for the purpose of said trial, and

**IT IS FURTHER ORDERED** on or before <u>Friday, May 20, 2011</u>, counsel for the parties shall confer in good faith, and file such Stipulation(s) and/or Agreement(s) as are appropriate regarding additional facts not in dispute, if any, and regarding documents to be admitted in evidence in full by agreement, and

**IT IS FURTHER ORDERED** that the <u>Second Amended Pretrial Order</u> (ECF No. 23) remains in full force and effect except as to the rescheduled trial date as set forth herein, and

**IT IS FURTHER ORDERED** that this Order enters without prejudice to any party to the Complaint to seek an advancement, extension, or continuance of the trial date (or other date) set forth herein, for cause.

Dated: March 31, 2011                                                                BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
United States Bankruptcy Judge